UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SAMUEL COURTLAND,

    Petitioner,

v.                                                     Case No. 2:12-cv-465
                                                      HON. GORDON J. QUIST

JEFFREY WOODS,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Samuel Courtland filed this petition for writ of habeas corpus, challenging his jury conviction for first degree murder of two year old Jalyn Daniel and second degree child abuse of seven year old Sydney Johnson. Petitioner was sentenced to life without the possibility of parole. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision.

    Petitioner alleges that:

    I. There was insufficient evidence to convict Petitioner of felony murder and the state courts' application of law was objectively unreasonable.

    II. Petitioner was denied due process by the delay in charging him with the crimes and the state court application of the law was objectively unreasonable.

    III. Petitioner was denied the right to present a defense because of the unconstitutional restriction on the presentation of evidence and the state court application of the law was objectively unreasonable.

    IV. Petitioner was denied a fair trial due to ineffective assistance of counsel.

V. Ineffective assistance of appellate counsel.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The Supreme Court has held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies

the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner argues that the prosecution presented insufficient evidence to convict him of felony murder and the state court's rejection of the issue was an unreasonable application of law. Petitioner explains that the prosecution's theory was that Petitioner intentionally inflicted injuries on Jalyn Daniel and the Petitioner's refusal to seek medical treatment for Jalyn Daniel resulted in

the suppression of his immune system which ultimately caused death from pneumonia. Petitioner argues that the prosecution failed to present sufficient evidence to establish a link between his actions and Jalyn Daniel's death.

> The Michigan Court of Appeals rejected this claim stating:
>
> A person is guilty of first-degree felony murder when the murder is "committed in the perpetration of, or attempt to perpetrate ... child abuse in the first degree." MCL 750.316(1)(b). First-degree child abuse is committed "if the person knowingly or intentionally causes serious physical or serious mental harm to the child." MCL 750.136(b). Defendant argues the prosecutor failed to present sufficient evidence to support a finding that defendant knowingly or intentionally caused Jalyn serious physical harm. Intent can be inferred from circumstantial evidence including the act, means, or manner employed to commit the offense. People v. Hawkins, 245 Mich.App. 439, 458, 628 N.W.2d 105 (2001). Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is all that is needed to support a finding that a defendant acted with a specific intent. People v. McRunels, 237 Mich.App. 168, 181, 603 N.W.2d 95 (1999).
>
> Here, the circumstantial evidence of defendant's intent to cause Jalyn physical harm is more than minimal. There is not only direct testimony about observed physical abuse, there is also compelling medical testimony to support the verdict. See People v. Howard, 226 Mich.App. 528, 550, 575 N.W.2d 16 (1997). Jalyn's siblings testified that defendant repeatedly beat Jalyn with a belt on several occasions. In addition, Cynthia Daniel, the mother of both Jalyn and Sidney, testified that Jalyn was burned with a household iron while under defendant's care. The postmortem medical examination revealed severe injuries, some of which were the result of repeated inflictions of blunt force. Jalyn also suffered third-degree burns, hemorrhaging in the brain, dead skin cells, loss of pigmentation in the feet, almost complete bruising on the legs, and internal hemorrhaging. The record establishes that defendant repeatedly physically abused Jalyn, and it is reasonable to conclude from the evidence that the abuse was intentional.

Michigan Court of Appeals decision, docket #25 at 1-2.

In addition to the significant medical testimony establishing that Jalyn was abused and suffered injuries from the beatings all over his body, medical evidence was entered to show that the abuse lead to the suppression of Jalyn's immune system, which ultimately caused his death. Pathologist Dr. Daniel Remick testified regarding his opinion of immune system suppression from blunt force trauma.

> Q. Doctor, enter your opinion was Jalyn Daniel a person that became immuno suppressed or immuno compromised as a result of those blunt force and thermal injuries?
>
> A. He was at a higher likelihood to develop immuno suppression because of the blunt force injury, and when that's added to pneumonia, which is a very common disease in young children, it indicates that he was immuno suppressed and that often develops in the lung.
>
> Q. Doctor, was that relationship between the blunt force trauma and the infectious complication of pneumonia, was that a lethal complication of blunt force trauma in this case?
>
> A. I would directly connect the prior trauma to the development of pneumonia, which was the development of the cause of death.
>
> Q. Doctor, my last question is this, once a person, who is immuno suppressed develops bacterial pneumonia, how rapidly does that bacterial pneumonia progress as opposed to a normal person?
>
> A. First of all, the development of the pneumonia happens pretty quickly. But, once they have the pneumonia they can't fight it off, and so, they get much sicker much more quickly and then they progress on to die more quickly than the normal person also.

Trial transcript docket #20 at 469. Similarly, Medical Director of Forensic Pathology at Sparrow Hospital, Dr. Joyce DeJong testified:

> There is a link between that. When any one is injured severely or as severely as Jalyn was injured, they will be become immune compromised. Their immune system doesn't work appropriately.

- 5 -

> And, all of us sitting here right now are fighting bacteria in our system.
>
> If you brushed your teeth today, you have bacteria getting into your system, you're able to fight it because you're healthy. That doesn't always happen, if you're not in healthy, and if you have suffered severe injuries, there are chemical reasons why your immune system doesn't work, and doesn't function properly. And, one of the - - one typical complication that may occur is somebody, who has sustained severe injuries, is pneumonia. And, I have given an example, about the reason people, children, for example, die in car incidents or who may die of injury from a fall or any other reason, it's quite common, in fact, to find in them, in addition to their injuries, to find pneumonia, because the body quit fighting quite fighting the infection like it's supposed to. It's a direct complication of injury.

Trial transcript docket #19 at 408. Dr. DeJong found that the cause of Jalyn's death "was complication of multiple blunt force thermal injuries," and labeled the manner of death as a homicide. *Id.* at 411.

A conviction is supported by sufficient evidence if, when "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir.2008) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original)). In a habeas proceeding, however, the court cannot simply conduct a de novo review of the state court's application of that rule, but must review its sufficiency-of-the-evidence decision under the highly deferential standard of AEDPA. Petitioner can be granted habeas relief only if the Michigan Court of Appeals unreasonably applied the *Jackson* standard. *See Getsy v. Mitchell,* 495 F.3d 295, 315-16 (6th Cir.2007) (en banc) (whether the petitioner is entitled to habeas relief ultimately depends on whether the state court's denial was based on an unreasonable application of clearly established federal law regarding the sufficiency of the evidence.). The court's task is "to determine whether

it was objectively unreasonable for the state court to conclude that a rational trier of fact, after viewing the evidence in the light most favorable to the state, could have found that Petitioner committed the essential element of the crimes charged beyond a reasonable doubt. *See Nash v. Eberlin,* 258 Fed. Appx. 761, 765 (6th Cir.2007).

When reviewing whether the state court's determination was "objectively unreasonable," the court must engage in a two-step analysis. First, the court must ask whether the evidence itself was sufficient to convict under *Jackson.* The inquiry ends if it is determined that there was sufficient evidence to convict Petitioner. If the court finds that the evidence is insufficient to convict, it must then apply AEDPA deference and ask whether the state court was "objectively unreasonable" in concluding that a rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. *Id.* The law therefore "commands deference at two levels." *Tucker,* 541 F.3d at 656. In the opinion of the undersigned, the evidence submitted at trial was sufficient to support a felony murder conviction. Most importantly, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner alleges that his due process rights were violated by the excessive delay in charging him with a crime. The Michigan Court of Appeals rejected this claim explaining:

> Defendant argues lastly that his due process rights were violated by prearrest delay. Long delays before a defendant is arrested can deprive him of his due process rights and require dismissal of charges. *People v. Marion*, 404 US 307, 324-326: 92 S Ct 455: 30 L Ed 2d 468 (1971). Defendant points to changes in Daniel's version of events between the time when the police began the investigation and the time when he was finally arrested. However, discrepancies

> in Daniel's version of events were sufficiently addressed at trial. Defendant also argues that the trial depended largely on the memories of the children testifying as to whether it was defendant Daniel that inflicted the injuries. However, "[a] general claim that the memories of witnesses have suffered is insufficient to demonstrate prejudice." *People v. Musser*, 259 Mich App 215, 220: 673 NW2d 800 (2003); see also *Tanner, supra* at 414-415 ("Actual prejudice is not established by general allegations or speculative claims of faded memories, missing witnesses, or other lost evidence."). Defendant was not prejudiced by an prearrest delay.

Michigan Court of Appeals decision docket #25 at 4.

In this case, the police investigation began in May 2005, and Petitioner was charged with crimes in March 2006. Petitioner seems to suggest that if he was charged earlier he would have been found not guilty because witnesses initially were not cooperating with police, and the police did not have evidence against him to support a conviction. Petitioner's argument is nonsensical, because it is basically an admission that he should not have been charged earlier since the investigation was incomplete. In *United States v. Lovasco*, 431 U.S. 783 (1977), the Supreme Court reversed a lower court's dismissal of an indictment based upon pre-indictment delay. The defendant argued that due process required dismissal of the indictment due to an 18-month delay between the government's knowledge of the crime and defendant's indictment. The defendant attempted to establish prejudice by showing that two witnesses for his defense had died during the delay to bring the charges. The defendant did not state how the witnesses would have aided the defense. The only reason cited by the government for the delay was that it hoped to discover other individuals involved in the crime prior to indictment. The court noted that "actual prejudice makes a due process claim concrete and ripe for adjudication, not that it makes the claim automatically valid." *Id.* at 789. Further, the court stated "that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *Id.* at 790. The court found the delay was a good faith delay to

undertake further investigation. The court stated "[i]n our view, investigative delay is fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused. . . .' We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." *Id.* at 795-96, citing *Marion*, 404 U.S. at 326. Similarly, in this case, to the extent that there even was an arguable delay in bringing charges, the slight delay was for investigative purposes only. In the opinion of the undersigned, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

        Further, Petitioner failed to raise his argument in the Michigan appellate courts that the prosecution waited until witness Cynthia Daniel wanted to testify against Petitioner, before charging Petitioner with a crime. In the opinion of the undersigned, Petitioner procedurally defaulted this issue. When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274

F.3d 337, 348 (6th Cir. 2001). In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). In this case, Petitioner never raised this issue in the Michigan appellate courts, and Petitioner does not have any other relief available to him in the Michigan appellate courts. Further, Petitioner has not established cause for his procedural default. In addition, the delay was in fact simply investigative delay due to the lack of witness cooperation. In the opinion of the undersigned, Petitioner's claim lacks merit.

Petitioner argues that the trial court violated his right to present a defense when the court would not allow Petitioner to call a witness to testify that Cynthia Daniel had contact with her children despite her claim that she was denied contact with the children after they were removed from her custody. However, "such an inquiry . . . is no part of a federal court's habeas review of a state conviction." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). In *Estelle v. McGuire*, the Supreme

Court addressed the issue of whether the admission of evidence in violation of California state law entitled a petitioner to habeas corpus relief.

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); see also *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975) (per curiam).

*Estelle v. McGuire*, 502 U.S. at 67-8.

The appropriate inquiry is whether the allegedly improper admission of evidence violated the petitioner's constitutional rights. *Estelle v. McGuire*, 502 U.S. at 68. A federal court will grant habeas corpus relief only where a violation of the state's evidentiary rule results in the denial of fundamental fairness, and therefore, a violation of due process. *Brown, III v. O'Dea*, 187 F.3d 572, 578 (6th Cir. 1999) (citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988)).

> "The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is 'material in the sense of a crucial, critical highly significant factor.'" *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989)).

*Brown, III v. O'Dea*, 187 F.3d at 578.

The Michigan Court of Appeals denied this evidentiary claim:

Defendant also argues that his right to offer a defense was unconstitutionally restricted when the trial court excluded rebuttal testimony by a friend of Daniel, who was prepared to testify that Daniel spoke with her son Sydney some time in the fall of 2005 at the boy's school. Defense counsel offered this testimony as impeachment or rebuttal evidence in response to Daniel's testimony that the last

> time she saw Sydney was at the hearing where her parental rights were terminated.
>
> Daniel's contact with Sydney after the termination of parental rights does not constitute a bad act "probative of truthfulness or untruthfulness." MRE 608(b)(1). Further, "MRE 608(b) generally prohibits impeachment of a witness by extrinsic evidence regarding collateral, irrelevant, or immaterial matters." *People v. Spanke,* 254 Mich.App. 642, 644, 658 N.W.2d 504 (2003). Extrinsic evidence is "[e]vidence that is calculated to impeach a witness's credibility, adduced by means other than cross-examination of the witness." Black's Law Dictionary (8th ed). And while the proffered rebuttal does rebut Daniel's testimony about when she last had contact with Sydney, defense counsel solicited the denial during his cross-examination of Daniel. "[A] denial cannot be elicited on cross-examination simply to facilitate the admission of new evidence." *People v. Figgures,* 451 Mich. 390, 401, 547 N.W.2d 673 (1996).

Michigan Court of Appeals decision, docket #25 at 2. In the opinion of the undersigned, Petitioner has not shown that his constitutional rights were violated.

Petitioner argues that his trial counsel was ineffective for failing to present an available defense that the burns on Jalyn's feet were accidental. Petitioner asserts that Sidney Johnson watched his brother knock over the iron which landed on Jalyn's feet resulting in the burns. Petitioner claims that counsel was not effective in cross-examination and was not prepared to present expert testimony on behalf of Petitioner. Petitioner first raised this issue on a motion for relief from judgment. The trial court found that Petitioner could not overcome his procedural default of this issue by establishing ineffective assistance of appellate counsel for failing to raise ineffective assistance of trial counsel. Opinion and Order, July 22, 2010, attached to docket #27.

As previously stated, in this habeas proceeding, Petitioner may only overcome his procedural default by showing cause and prejudice for the default. *House*, 547 U.S. at 536; *Murray*, 477 U.S. at 495; *Hicks*, 377 F.3d at 551-52. Petitioner attempts to overcome his procedural default by arguing that his appellate counsel was ineffective for failing to raise ineffective assistance of trial

counsel. The Michigan Courts have already rejected this claim. The trial court found that Petitioner failed to set forth any reasons in support of his claim of ineffective assistance of appellate counsel. The court found that Petitioner could not show that but for the alleged error, he had a reasonably likely chance of acquittal. As the court explained" "in light of both the medical testimony and the record, which establishes that Defendant repeatedly abused the victim prior to his death, it is not reasonably likely Defendant is actually innocent of the crime in which he stands convicted." Opinion and Order, July 22, 2010, attached to docket #27, at 5.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

In the opinion of the undersigned, just as the Michigan Courts have already determined, Petitioner procedurally defaulted his ineffective assistance of trial counsel claim, and Petitioner cannot overcome his procedural default because he is unable to establish that his appellate counsel was ineffective. Nor can Petitioner establish actual innocence. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for

habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: September 3, 2015        /s/ TIMOTHY P. GREELEY
       TIMOTHY P. GREELEY
       UNITED STATES MAGISTRATE JUDGE